JEAN JOHNSTON, a Minor, by MILDRED JOHNSTON, Next Friend, v. C. CARL RAMMING, Appellant.—100 S. W. (2d) 466.

Division One, January 5, 1937.

*Wm. R. Schneider* for appellant.

*N. Murry Edwards* for respondent.

FERGUSON, C.—Jean Johnston, an infant, brought this action in the Circuit Court of the City of St. Louis, by her next friend, Mildred Johnston (her mother), for damages for personal injuries sustained when she was struck by an automobile owned and driven by defendant Ramming. The collision occurred on December 22,

1933, at or near the intersection of Laclede Avenue and Spring Street in the city of St. Louis. Upon a trial of the cause the jury returned a verdict for the defendant. ■ The trial court sustained plaintiff's motion for a new trial and specified of record as grounds therefor error in giving, at the request of defendant, instructions numbered 3 and 6. The defendant appealed from the order granting a new trial. The petition alleges damages in the amount of $15,000 wherefore our jurisdiction of the appeal.

As appellant here, defendant contends that under the facts shown by his evidence his instructions 3 and 6 were not erroneous and were properly given. Respondent does not present or urge any of the other alleged errors set out in the motion for a new trial as grounds on which it ought to have been sustained and we therefore confine our ruling to the two instructions given at defendant's request and specified by the trial court as grounds for the order granting the new trial. This necessitates a summary of the evidence.

Laclede Avenue in the city of St. Louis is an east and west street. Spring Street, a north and south street, intersects Laclede Avenue. There are two parallel, east and west, street car tracks in the center section of Laclede Avenue. There are no street car tracks on Spring Street. Laclede Avenue, from curb to curb, is forty-six feet wide. Spring Street, south of Laclede Avenue, is thirty feet wide, from curb to curb. The following other undisputed measurements may be found pertinent. It is fifteen feet and six and one-half inches from the north rail of the north (westbound) street car track, on Laclede Avenue, to the south rail of the south (eastbound) street car track; fifteen feet and four inches from the south rail of the south (eastbound track) to the south curb of Laclede Avenue; two feet and ten inches from the south curb of Laclede Avenue to the sidewalk along the south side of Laclede Avenue; the sidewalk is six feet wide. A Kroeger store is located at the northeast corner of the intersection of Laclede Avenue and Spring Street; there is a vacant lot at the southeast corner and a "confectionery store" at the southwest corner. This confectionery store is referred to as "McCoy's" and plaintiff's evidence is that "it sets off of the corner 25 feet or more" and "faces north on Laclede Avenue." This statement is somewhat confusing but the inference the writer has drawn is that the confectionery store is located twenty-five feet or more south of Laclede and about the same distance west of Spring Street. However a plat showing the situation and distances, not reproduced in this record, was in evidence and before the jury. Plaintiff was, at the time, eight years of age. "About four o'clock on that afternoon she was with her mother at the Kroeger store on the northeast corner of the intersection. Plaintiff testified that she "left" her mother in the Kroeger store and started alone to McCoy's; that she first

crossed Laclede Avenue to the south side thereof (being the southeast corner of the intersection) and while going thence west across Spring Street was struck by plaintiff's automobile moving south, across the intersection, on Spring Street.

Plaintiff and defendant are the only witnesses testifying as to the place and circumstances of the collision and the events immediately surrounding same. They relate contradictory versions. Plaintiff testified, in substance, that in attempting to cross Spring Street, from the east toward the west, she followed the usual path of pedestrians along the south side or line of the intersection; that before going into Spring Street "I looked both ways" but "did not see any automobile at all;" that she "then started" across the street and was "right in the middle of Spring Street" (the street is thirty feet wide from curb to curb) when she "first saw" defendant's automobile coming from the north and it was then in the intersection and on the north (or westbound) street car track on Laclede Avenue, according to the measurements, supra, the automobile was then approximately thirty to thirty-two feet from the path of pedestrian travel along the south side of the intersection; that when "I saw Mr. Ramming's car on the first of the two tracks I tried to run to make it across the street;" that "the automobile struck me . . . it hit my right leg and I grabbed onto the headlight on the right side" of the automobile. Defendant testified that at the time of the collision a continuous line of automobiles were parked along the curb for a half block or more on both sides of Spring Street south of Laclede; that "the only place where there was any room (in this half block) for another car to get in was on the west side of the street at the fire plug . . . the balance of the street was filled with automobiles on both sides;" that these parked automobiles extended out from the curb into the street, on each side, six and one-half to seven feet (the street being thirty feet wide from curb to curb the open space for travel would thus be reduced to sixteen or seventeen feet); that "the center line of Spring Street (south of Laclede) was then about eight or nine feet from the outside of the automobiles parked on either side;" that driving south on Spring Street, north of Laclede, and upon reaching Laclede Avenue, or the north side of the intersection, he brought his automobile to a complete stop and waited until an automobile moving east on Laclede Avenue had passed; that he then had a clear view to the south, east and west; that he did not see plaintiff nor any other pedestrian in the intersection or about to enter thereon; that he then started his automobile and moved south across the intersection; that as he "crossed Laclede" he "noticed an automobile coming north about the alley south of Laclede on Spring Street;" that this northbound automobile was traveling on the east side of and about "a foot or two" from the center line

of Spring Street; that his automobile was traveling on the west side of and about "one or two feet" from the center line of the street; that about twenty-five feet south of the south line of the intersection, and pedestrian path of travel over the south side of the intersection, the northbound automobile passed his automobile and plaintiff suddenly appeared or came in view from behind and "around in back of" the passing automobile, about two feet east of the center of the street and about six feet south of his automobile; that when she thus came into view "she was running like blazes" toward "the west with her head down;" that she "ran directly in front of me;" that his automobile was, at the time plaintiff came into view, traveling at a speed of about twelve miles an hour; that upon plaintiff's appearance "running" from "in back of" the passing northbound automobile "I slammed on my brakes and swerved to the right a little;" that "from the time I first saw her until I came to a stop I went about 8 feet" and "when my automobile came to a stop . . . its left front end was about 3 feet west of the center line of Spring Avenue and it was about 25 or 30 feet south of the south curb of Laclede Avenue;" that the left side of the "front bumper" struck plaintiff; that "no part of the wheel ran over her and she was not in contact with the front wheel at all;" and that when his automobile came to a stop "she was lying in the street directly in front of my left front wheel." Plaintiff suffered a "fracture of the bone of the upper (right) leg."

Appellant does not contend that a submissible case was not made. Plaintiff submitted her case solely on the humanitarian doctrine and her given instruction numbered 1, predicates recovery on a finding, by the jury, of the facts in accordance with her version, that is, that "plaintiff was in a traveled portion of Spring Street . . . in a place of imminent peril and danger of being struck . . . by defendant's (approaching) automobile . . . that defendant either saw or by the exercise of ordinary care (as stated in the instruction) could have seen plaintiff's peril and danger of being struck by his automobile in time thereafter, by the exercise of ordinary care and with the means at hand and with safety to defendant . . . to have checked the speed, stopped his automobile, or turned the same aside or sounded a warning and to have avoided striking . . . plaintiff" but "that defendant negligently failed to check the speed of his automobile," etc. The instruction concludes; "then your verdict should be for the plaintiff and against defendant, even though you find and believe . . . that plaintiff negligently placed herself in a place of imminent peril and danger." The evidence as to speed has been noted, that is, that defendant's automobile was traveling "about 12 miles an hour when" he "first saw plaintiff." Defendant further stated, and his testimony constitutes all the evidence relative

thereto, that "my brakes were in good mechanical condition" and "I judge that under the conditions prevailing there, the street being dry, I could stop my automobile going at 12 miles an hour in about 8 or 10 feet. I stopped in about 8 feet;" and that "from the time I first saw her until I came to a stop, I went about 8 feet." Defendant's evidence, set out supra, is to the effect that plaintiff attempted to cross Spring Street from east to west at a point approximately twenty-five feet south of the southeast corner of the intersection; that she went into the street from beween automobiles parked in a continuous line along the side of the street and thence "from around back of" the passing northbound automobile to the point where she was struck so that her presence in the street was concealed from defendant as he drove south until she suddenly emerged running from behind the passing northbound automobile; that she ran directly into the path, and in front, of defendant's automobile, and though defendant "slammed on" the brakes at the instant he first saw her, and could have seen her, turned his automobile to the left and brought it to a stop within about eight feet, as quickly as he could swerve and stop it with the means at hand, under the circumstances and at the speed it was then traveling, he was unable to avoid striking plaintiff.

If the jury accepted defendant's version and found the facts accordingly, as they did, they would necessarily find that the defendant was not negligent under the humanitarian rule and that plaintiff's own negligence was the sole cause. Defendant says that his given instruction numbered 3 properly submitted this theory of the occurrence and that the trial court did not commit error in giving same. The giving of the instruction, it will be remembered, was one of the grounds specified of record by the trial court for the granting of a new trial. The instruction first advises the jury that the defendant "was not required, under the law, to stop or attempt to stop his automobile, to slow same down, swerve it, or to sound an alarm on it until he saw, or by the exercise of the highest degree of care could have seen, that the plaintiff was in imminent danger or peril of being struck by the defendant's automobile, and then the defendant Ramming was required only to use the means and appliances at hand to try to avoid striking the plaintiff, Jean Johnston, with his automobile." Respondent makes no criticism of this statement. The facts which the following part of the instruction requires the jury to find, in order to return a verdict for defendant, are shown by defendant's evidence and, as we have pointed out, if accepted by the jury absolve the defendant of negligence under the humanitarian rule. Such part, and the remainder, of the instruction reads: "you are instructed that if you find and believe from the evidence that the plaintiff, Jean Johnston, ran suddenly from behind another auto-

mobile into a place of danger immediately into the path of the automobile of the defendant Ramming, and that at said time his automobile was so close to the plaintiff that the said Ramming, in the exercise of the highest degree of care with the means and appliances at hand and with safety to himself could not avoid collision with the plaintiff, then the defendant Ramming was not guilty of negligence, and your verdict will be in his favor. In other words, you are instructed that before the defendant Ramming can be found guilty of negligence in connection with the injuries of the plaintiff, Jean Johnston, you must find that the defendant Ramming, in the exercise of the highest degree of care, in the operation of his automobile had a reasonable opportunity to avoid the accident in question, and if you find and believe from the evidence that the plaintiff Jean Johnston ran so suddenly from behind another automobile directly into the path of and in front of the defendant Ramming's moving automobile so that said Ramming, in the exercise of the highest degree of care and with the means and appliances at hand, was unable to avoid contact between the automobile and the plaintiff Jean Johnston, then the injuries which the said Jean Johnston suffered by said contact were not due to the negligence of the defendant and your verdict should be in favor of the defendant Ramming.''

The defendant was entitled to have any facts in evidence constituting a defense submitted to the jury. [Parker v. St. Louis-San Francisco Ry. Co. (Mo.), 41 S. W. (2d) 386.] In Borgstede v. Waldbauer, 337 Mo. 1205, 88 S. W. (2d) 373, this court en banc, said: '' 'Suddenly' means unexpectedly and is a word well understood by the average layman. If a pedestrian in a place of safety suddenly runs into a street in front of or into the side of a moving car, so as to make it impossible for the operator of the car to prevent a collision by the exercise of the highest degree of care in the operation thereof, the driver should not be held liable even under the humanitarian doctrine.'' True contributory negligence of plaintiff is not a defense in a case submitted solely under the humanitarian rule (see Borgstede v. Waldbauer, supra, and cases there cited), but ''if plaintiff's acts . . . were the sole cause of his (or as here, her) injuries and defendant was not negligent then a verdict for the defendant is authorized.'' [Borgstede v. Waldbauer, supra.] If, in the instant case, the facts and circumstances of the collision were as shown by defendant's evidence and submitted by defendant's Instruction 3, supra, plaintiff's own negligent acts were the sole cause thereof, and defendant was not negligent, and a finding by the jury of the facts set out in the instruction was equivalent to a finding to that effect. Under his evidence herein defendant was entitled to have that issue submitted to the jury by appropriate instructions setting

forth the facts relied upon. [See Doherty v. St. Louis Butter Co.,
339 Mo. 996, 98 S. W. (2d) 742.]

We do not discover, nor does respondent clearly point out, wherein
it was error, under defendant's evidence, to give the instruction.
The only specific complaint respondent makes against the instruc-
tion is that it "limits the danger zone to the path of defendant's
automobile" and in this connection cites, Gray v. Columbia Terminals
Co., 331 Mo. 73, 52 S. W. (2d) 809, and cases of like import. A
similar instruction was not ruled in the cases cited. Taking the Gray
case as an example, in ruling a demurrer to the evidence we held
that a submissible case was made under the humanitarian rule. The
case was submitted solely on negligence under the humanitarian rule.
Gray, a pedestrian, while crossing from the east to the west side of
Seventh Street, a north and south street, sixty feet in width, in the
city of St. Louis, was struck by defendant's motor tractor traveling
south and received injuries which resulted in his death. He was
attempting to cross the street at a point about midway of the block
or some distance from the intersections. Our summary or comment
on the evidence, following a statement thereof, shows the facts in
evidence from the viewpoint most favorable to plaintiff, as follows:
"As he crossed the street Gray was at all times within plain view
of the driver, had the driver been alert and watchful. Gray walked
at an ordinary and uniform gait from the east side of the street
toward the west side. It must have been apparent that he was intent
upon crossing the street, and all the witnesses who saw the accident
agree that Gray continuously looked or 'watched' toward the south
as he walked west and until he was struck by the tractor. A jury
could well have found that when Gray was within three feet of the
center of the street and within eight feet of the path of the truck
which was then thirty-five or forty feet to the north, it was apparent
from his actions and appearance, as he continued walking west at
the same gait and looking to the south, that he was intent upon pur-
suing a course which would bring him with three steps into the path
of the tractor and that he was wholly oblivious to the approach of
the tractor, and further that had the driver exercised proper care in
keeping a lookout ahead he could have discovered Gray's perilous
situation in time to have stopped the tractor which, traveling, as
it was, at six or seven miles an hour, could have been stopped in six
or eight feet and thereby have avoided striking Gray; or that had
he sounded a warning Gray's attention would have been attracted
in time for him to have halted short of the path of the tractor; or the
jury might well have found that had the driver exercised proper care
he could have discovered Gray's perilous situation in time to have
swerved or turned the tractor to the right and thus have avoided
striking Gray." At the defendant's request the trial court gave an

instruction telling the jury that their verdict should be for defendants if they found "that it was impossible for the driver . . . with the means and appliances at hand and with safety to himself and the occupants of his truck to have avoided striking the deceased by swerving the truck, stopping the truck or sounding a warning" after Gray came "into the path" of the tractor. We held that under the evidence the instruction was erroneous in limiting the danger zone to "the path of the tractor." In that connection we said: "In effect, the instruction tells the jury that a position of peril to which the humanitarian rule would become applicable did not exist until Gray was directly in front of and within the path of the tractor, and that the driver was not required under the humanitarian rule to make any effort to avoid striking Gray until he came within the path of the truck regardless of the situation shown by the evidence as to Gray's apparent obliviousness at all times to the approach of the tractor as he continued an unchecked course toward and within a few steps of the path which the tractor was pursuing and while it was yet a sufficient distance north within which it could have been either stopped, the speed slackened, or at least a timely warning sounded after it must have become evident to a reasonably prudent person that Gray was in a perilous position or was unknowingly entering into a position of peril and danger. The dictates of humanity imposed upon the driver the duty to take such action to avert striking Gray as the means at hand allowed as soon as he saw, or by the exercise of proper care could have seen, Gray's perilous situation and forbid him, in the face of the apparent peril into which Gray was heedlessly thrusting himself, to wait until Gray came directly in front of and into the path of the tractor before making any attempt to prevent striking him." We think it apparent that defendant's instruction in the present case does not come within our ruling in the Gray case and like cases.

▆ During the *voir dire* examination of the jury the following occurred:

"MR. EDWARDS (counsel for plaintiff) : I wish to ask Mr. Schneider (counsel for defendant) out of the hearing of the jury and in the presence of the Court, whether he represents any insurance company in the defense of this case, and, if so, which one.

"MR. SCHNEIDER (counsel for defendant) : The Western & Southern Indemnity Company of Cincinnatti carries a limited policy of liability insurance on the defendant and his automobile involved in this case.

"MR. EDWARDS: Gentlemen of the jury, I now ask you all collectively whether any of you are employed by, do any business with, know any of the officers of or own any of the stock or bonds of the Western & Southern Indemnity Company of Cincinnati?

"No answer."

No reference to insurance appears in the evidence. At defendant's request the court gave instruction numbered 6, alleged error in the giving of which was specified by the court as one of the grounds for granting a new trial. The instruction, parenthesis ours, is as follows: "The Court instructs the jury that while you were asked whether you were in any way interested in The Western and Southern Indemnity Company of Cincinnati when you were being examined for the purpose of qualifying you as jurors in this case, you are now instructed that (there is no evidence before you in this case about either the plaintiff or the defendant being insured with respect to the accident here in question, and) you will (therefore) disregard entirely said question about the said Indemnity Company in arriving at your verdict in this case." If it be granted, though we do not so rule, that a cautionary instruction might properly be given admonishing the jury in arriving at a verdict to disregard, and not be influenced by, questions asked on *voir dire* examination relating to their interest, if any, in or connection with an insurance company, certainly it is improper to include therein the matter which we have enclosed in parenthesis. In Brooks v. Menaugh (Mo.), 284 S. W. 803, 805, we said: "The trial court by Instruction 3, on behalf of Menaugh (one of the defendants), told the jury that there was no evidence that an insurance company had any interest in the case. The giving of this instruction was complained of and is assigned as error. The instruction was improper; if evidence had been offered to show that an insurance company was interested on behalf of either of the defendants, the evidence would have been incompetent and should have been excluded. It might be that, under some circumstances, such an instruction would have been harmless, but it should be refused on another trial." This case was fully tried upon the merits. The issue of fact made by the evidence, and upon which defendant's liability depended, was, as we have held, properly submitted to the jury, that is, whether plaintiff was struck by defendant's automobile under the circumstances as shown by her evidence or whether she went into the street at the place, from between the parked automobiles, and ran thence suddenly from behind a northbound automobile immediately in front of defendant's automobile so that defendant, in the exercise of the highest degree of care, was unable to timely discover her presence in the street and with the means at hand avoid striking her, as shown by his evidence. Under such circumstances we are inclined to think the instruction could not have affected the finding of the jury on the merits and standing alone, as the only ground for a new trial, hardly such as to require a retrial of the cause.

The order of the trial court granting a new trial is therefore reversed, and the cause remanded, with directions to set aside the order

granting a new trial, reinstate the verdict and enter judgment for defendant thereon. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur, except *Hays, J.,* who concurs in result.