JOHN JOHNSON, Appellant, v. HARRY DAWIDOFF.—No. 38114.—177 S. W. (2d) 467.

Division Two, January 3, 1944.

Rehearing Denied and Motion to Transfer to Banc Overruled, February 7, 1944.

344

*Russell J. Horsefield* and *Chelsea O. Inman* for appellant.

*Wilbur C. Schwartz* and *Morton K. Lange* for respondent; *Orville Richardson* of counsel.

WESTHUES, C.—Plaintiff sued the defendant to recover $15,000.00 as damages for personal injuries sustained when he was struck by the defendant's car. The trial resulted in a verdict and judgment for the defendant from which plaintiff appealed. The case was heard in this court at the September Term, 1942, and an opinion delivered. A rehearing was granted and the cause reargued at the September Term, 1943.

The trial court submitted the case to a jury on primary negligence and also under the humanitarian doctrine. The parties rebriefed the case on rehearing.. The alleged errors complained of pertain to defendant's instructions 9, 10 and 12. Before considering the assignments of error it will be necessary to state the evidence of both plaintiff and defendant for the reason that the instructions must be considered in the light of the evidence. About 9:30 P. M., December 11, 1939, plaintiff was walking west toward Twelfth street on the north side of Chouteau avenue in the city of St. Louis, Missouri. The weather was clear and dry. As he was thus walking west in the ten hundred block he heard a newspaper vender on the south side of the street and decided to cross over and purchase a paper. He started across, and while on the north side of the street was struck by the defendant's car which was being driven west. The dispute in the evidence was with reference to plaintiff's position in the street at the time of the accident and whether plaintiff was standing still or walking when struck. Plaintiff testified that he saw defendant's car approaching as he walked in front of a parked automobile and that he stopped when he reached a point about twelve feet from the sidewalk, at which time he noticed the defendant's car astride the north rail of the street car tracks about fifty feet to the east. Plaintiff stated that had the car continued in a straight line it would have passed him to the south. Plaintiff also testified that after he took notice of defendant's car at that point he looked west to see if any cars were coming from that direction and at that moment was struck by defendant's car. Plaintiff's witness, Louis Bruno, testified that at that time he was walking west on the north side of Chouteau avenue and noticed plaintiff start across the street; that plaintiff walked between two cars parked about three feet apart. We quote the following from the evidence of witness Bruno, as abstracted by appellant. On direct examination he testified:

"At the time of this accident I was walking west on the north side of Chouteau avenue and saw Mr. Johnson walking west. When I first noticed him he was about 25 feet ahead of me. I saw him leave the curb, but didn't see him any more after that. After I saw him leave the curb I saw the car coming, and the first thing you know I heard the wheels grind and then the bump. When Johnson left the curb I looked to see where he was going, looked back east, and saw this fellow, and at the same time heard the squeak of the brakes."

On cross-examination his evidence was as follows:

"When Johnson stepped off the curb I was about 15 feet behind him. There were three automobiles parked at the north curb. He stepped off between the last two. The space through which he stepped was about 2 or 3 feet wide. I didn't see Johnson stop, but when he stepped off the curb he kept right on going. Between the time he stepped off the sidewalk and the time he got hit was almost instantaneous."

The defendant testified that he was driving west on Chouteau avenue at the time and place as claimed by plaintiff, but that he was driving on a line about three feet south of the parked cars and north of the tracks. Note his evidence as to how the accident occurred:

"When nearing Tenth street I was driving north of the car tracks, between the car tracks and the north curb. Driving fifteen to twenty miles an hour. There were several cars parked there. I passed some of them and then suddenly Mr. Johnson walked right out in front of my car. I put on the brakes and turned a little bit outside. I just saw this man when he was about two feet ahead of me."

On cross-examination he testified as follows:

"There was no traffic in the street at the time and the street was perfectly well lighted so I would have no difficulty seeing a man standing in the street fifty feet away. I was looking straight forward and saw no one in the street or on the sidewalk. There was one automobile parked west of where this man started to cross the street."

. . . .

"He walked out unconcerned like and threw his hands up. It seems to me he jumped on the hood of my car. He was not running but was walking pretty fast. I saw him move all together about two or three feet. It seemed to me that he threw up his hands and fell on the hood or jumped on the automobile. The right front headlight must have hit the man because the lens was broken and the light was turned away from the body."

In appellant's abstract we also note that on cross-examination the defendant is alleged to have made the statement: "If I had looked in this man's direction I would have seen him, but I didn't." Defendant, not being satisfied with that narration of his evidence, filed a supplemental abstract of the record showing the questions and answers on that point. They were as follows:

"When I gave my deposition I surmised that this man jumped on the car and fell ██ off when I turned to the left. I thought he jumped on the car, didn't have a good hold and slipped. At the speed I was going I could have swerved my car three or four feet within six or eight feet.

"Q. Was there anything, as far as you can tell now, in the street, weather conditions; I mean by that, fog or anything; obstructions on the windshield of your car, or anything else—A. No.

"Q. . . . that would have prevented you from seeing a man standing twelve feet from the north curb of Chouteau avenue, in front of 1029 Chouteau avenue, at this particular time, and on this particular night, if you had looked in his direction? A. If I would have looked in his direction I would have seen him, but I didn't."

The defendant contends that the question was based on the supposition that a man was standing in the street fifty feet ahead of his car, and that his answer, based on that supposition, was, that he

could have seen a man but did not because there was no one there to see. The evidence can be so interpreted.

As above stated, the trial court submitted the case to a jury on primary negligence and also under the humanitarian doctrine. We may ignore the submission on primary negligence, as the points raised pertain to instructions concerning the humanitarian doctrine. Plaintiff's instruction number 8, given by the court, in substance informed the jury, that if the defendant saw, or by the exercise of the highest degree of care could have seen plaintiff attempting to cross over Chouteau avenue from north to south, and that plaintiff was at said time in a position of imminent peril of being struck by the defendant's car and the defendant could have thereafter, by the exercise of the highest degree of care, avoided the collision by swerving his car to the left, but failed to do so, then a verdict for plaintiff was authorized even though plaintiff may have been guilty of negligence which contributed to his injuries. The defendant offered and the court gave instructions 9 and 10 submitting defendant's theory of the case. Both of these instructions specifically referred to instruction 8 and are here assailed by plaintiff as being prejudicially erroneous. We will not attempt to give the instructions any designation such as converse instructions or sole cause instructions, but will determine whether under the evidence they properly submitted disputed questions of fact to the jury. Note that instruction number 8 submitted the question of whether defendant was negligent in not swerving his car if he saw or could have seen plaintiff in a position of peril. Defendant's instruction 9 must be considered in its entirely and therefore we set it out in full. It reads:

"With reference to the charge of negligence submitted to you in Instruction No. 8, the Court instructs the jury that the defendant was not required under the law to swerve his automobile until after he saw or, by the exercise of the highest degree of care, could have seen that the plaintiff was in a position of imminent danger or peril of being struck by the defendant's automobile and then the defendant was required only to use the means and appliances at hand to try to swerve and thus to avoid striking the plaintiff.

"You are, therefore, instructed with reference to said charge of negligence that if you find and believe from the evidence that the plaintiff suddenly walked from between two parked automobiles into the path of the defendant's automobile, and that at said time it was so close to the plaintiff that the defendant, in the exercise of the highest degree of care and with the means and appliances at hand, could not swerve and thus and thereby have avoided collision with the plaintiff, then the defendant was not guilty of said charge of negligence, and you will find in favor of the defendant on that issue.

"In other words, you are instructed that before the defendant can be found guilty of the charge of negligence submitted to you in In-

struction No. 8, you must find that the defendant, Mr. Dawidoff, in the exercise of the highest degree of care in the operation of his automobile, had a reasonable opportunity to swerve and thus to avoid the accident in question, and if you find and believe from the evidence that plaintiff walked so suddenly from between two parked cars directly into the path and in front of the defendant's moving automobile that the defendant, in the exercise of the highest degree of care and with the means and appliances at hand, was unable to swerve and thus and thereby have avoided striking the plaintiff, then you are instructed that the plaintiff's injuries were not due to any negligence of defendant, as submitted ▮▮▮▮ to you in Instruction No. 8, and you will find in favor of defendant on that issue.''

Johnston v. Ramming, 340 Mo. 311, 100 S. W. (2d) 466, 1. c. 469, 470 (2-4), is cited in support thereof. That case, we think, is directly in point and the facts upon which the instruction was based were somewhat similar. Appellant urges that the second paragraph limited the danger zone. That very question was considered at length in the opinion in the Ramming case and the point ruled against appellant's contention. The trial court had granted plaintiff a new trial and this court reversed the case and ordered the verdict for the defendant to be reinstated. The question was therefore given full consideration. It was held that the evidence supported the issue submitted. In the case before us defendant's evidence justified a finding that the defendant, by the exercise of the highest degree of care, could not have avoided the collision and plaintiff's own witness gave comfort to that theory. Note what the witness said: ''Between the time he stepped off the sidewalk and the time he got hit was almost instantaneous.'' This witness also stated: ''. . . I heard the wheels grind and then the bump.'' The instruction, as we see it, simply submitted to the jury in an affirmative way the question of whether plaintiff emerged from between two cars at a time and so suddenly that the defendant could not have avoided striking him. Plaintiff cites and relies much upon the case of Shields v. Keller, 348 Mo. 326, 153 S. W. (2d) 60, 1. c. 64. The instruction there condemned was differently worded than the instruction now under consideration. It omitted the question of the defendant's ability to have discovered plaintiff in a position of peril and was condemned because the facts hypothesized therein were insufficient to authorize a verdict for the defendant. The instruction under consideration contained the discoverable peril clause and specifically referred the jury to plaintiff's instruction number 8, which informed the jury that the defendant was liable if he could have discovered plaintiff in peril and did not do so. The danger zone was not unduly restricted. If the instructions are read together, which must be done, we must conclude that the issue was fairly submitted. A close analysis of the opinion in Shields v. Keller, supra, will disclose that it supports this conclu-

sion. We have examined the other cases cited by plaintiff, such as Gray v. Columbia Terminals Co., 331 Mo. 73, 52 S. W. (2d) 809; Schipper v. Brashear Truck Co., 132 S. W. (2d) 993; Hopkins v. Highland Dairy Farms Co., 348 Mo. 1158, 159 S. W. (2d) 254, and find nothing therein that conflicts with our ruling or the ruling made in Johnston v. Ramming, supra. It may be noted that the author of the opinion in the Ramming case also prepared the opinion in the Columbia Terminals Company case, supra. The latter case was considered and discussed in the Ramming opinion. Instructions must be considered in their entirety to determine the meaning thereof. Raymond Missouri Instructions, vol. 1, page 182, sec. 208 and cases there cited.

We now pass on to instruction number 10. We must keep in mind that plaintiff's instruction number 8 informed the jury that if the defendant by the exercise of the highest degree of care could have discovered plaintiff in peril and could have avoided striking him then plaintiff was entitled to a verdict even though guilty of negligence which contributed to his injuries. It was defendant's theory, which he supported by substantial evidence, that plaintiff's negligence was the cause of his injuries and that he, the defendant, was not negligent in any degree. Defendant's instruction 10 submitted that theory to the jury. Plaintiff has attacked the instruction on several grounds, therefore we are required to set it out in full. It reads as follows:

"With reference to the charge of negligence submitted to you in Instruction No. 8, the Court further instructs the jury that while it is no defense to said charge of negligence that the plaintiff may have been guilty of negligence which merely contributed to cause his injuries, still, if you find and believe from the evidence that the plaintiff attempted to cross Chouteau Ave. about 50 ft. west of the ordinary west pedestrians' crosswalk of Tenth Street and that he walked between two parked cars and suddenly emerged directly into the path and in the front of the defendant's automobile at a time when plaintiff, in the exercise of ordinary care on his part, should have known that defendant's automobile was approaching and that a collision was likely to occur, then you are instructed that the plaintiff was guilty of negligence, and if you further find that such negligence, if any, on his part was the sole cause of the collision mentioned in the evidence and that the accident was not due to or caused by any negligence of the defendant in any of the particulars submitted to you in other instructions herein, then and in that event the plaintiff is not entitled to recover and you will find your verdict in favor of the defendant."

Plaintiff's first contention is that the instruction was not supported by the evidence. He says that the defendant's evidence to the effect that "plaintiff suddenly appeared two feet to the right and two feet in advance of his automobile" must be regarded as contrary

to physical facts and obviously unbelievable, citing Crews v. Kansas City Public Service Co., 341 Mo. 1090, 111 S. W. (2d) 54, l. c. 59. Let that be conceded. It is evident that defendant's evidence of plaintiff being two feet in front and two feet to the side of his car when he first saw him is somewhat contrary to the physical facts. Perhaps defendant, being suddenly confronted with the peril of plaintiff, misjudged the distance between them. Appellant states that defendant testified he saw plaintiff when two feet from his car, but that this distance must have been twelve feet or more; that he also testified he could have swerved his car three or four feet in a distance of eight or ten feet. That may be true, but it does not follow conclusively that he could have swerved in time to have saved plaintiff, because, even if the defendant had discovered plaintiff at that distance, we must assume that some time would have had to elapse for reaction before he could have swerved his car and applied the brakes. Witnesses in stating distances under such circumstances are giving estimates only. Long v. Mild, 347 Mo. 1002, 149 S. W. (2d) 853, l. c. 856 (1, 2). Plaintiff's witness, Bruno, gave evidence which aided the defendant and supported the theory of the instruction. This witness testified that he could not see plaintiff at the time he was struck because of a parked car. That is evidence that plaintiff may have been out of the defendant's view before he stepped from the sidewalk. There were a number of cars parked at that point. Bruno also testified that there were skid marks for about eight or ten feet; that these marks were north of the tracks and turned southward toward the tracks. That lends support to the defendant's theory that he was driving in a line near the parked cars. This witness also stated: "I heard the skidding of the tires on the street and then heard the bump." Again he stated: "Between the time he stepped off the sidewalk and the time he got hit was almost instantaneous." The fact that the collision occurred at night was also for the jury's consideration in connection with the other evidence. It will be noted that plaintiff testified he saw the defendant's car approaching before he left the sidewalk. Under the above evidence a jury was justified in finding that plaintiff was negligent and that the defendant did all he could to avoid striking plaintiff and therefore was not negligent. We rule that the instruction was amply supported by evidence.

█ Appellant urges that the instruction is erroneous and fatally deficient because it failed to require the jury to find that plaintiff walked into the path of the car in such close proximity thereto that the defendant could not by the exercise of the highest degree of care have discovered the peril. Each instruction need not embody all the theories of the plaintiff and the defendant. If that were necessary, then only one instruction need be given. The discoverable peril theory was properly and fully submitted by plaintiff's instruction 8 and

defendant's instruction 9. Instruction 10 referred the jury to the other instructions for a determination of that question. Note its wording: ". . . that the accident was not due to or caused by any negligence of the defendant in any of the particulars submitted to you in other instructions herein, . . ." Appellant has cited cases holding instructions erroneous because no sufficient facts were hypothesized or because the evidence was insufficient to support the instruction. See Long v. Mild, 347 Mo. 1002, 149 S. W. (2d) 853; Stanich v. Western Union Tel. Co., 348 Mo. 188, 153 S. W. (2d) 54; Hillis v. Rice, 151 S. W. (2d) 717, 724; State ex rel. Snider v. Shain, 345 Mo. 950, 137 S. W. (2d) 527, l. c. 530 (7). In the latter case cited the instruction simply submitted to a jury the question of whether defendant was in the exercise of the highest degree of care. No other instructions were referred to or mentioned. In the Stanich case the court said: "Mere statements of abstract legal propositions therefore do not make proper jury instructions." The instruction now under consideration did not violate that rule. It bound the jury to the finding of facts hypothesized in the instructions. The case of Long v. Mild, 347 Mo. 1002, 149 S. W. (2d) 853, l. c. 857 (5, 6) (8), supports our holding. We must not overlook the rule that instructions must be considered together, ▮▮ especially so when one refers to another for determination of issues. Scott v. First Nat. Bank of St. Louis, 343 Mo. 77, 119 S. W. (2d) 929, l. c. 939 (10); Raymond Missouri Instructions, vol. 1, page 183, sec. 209.

▮▮ Instruction number 12, given at defendant's request, pertained to the burden of proof. The vice complained of is that the instruction placed too great a burden on plaintiff in that the jury was told plaintiff was required to sustain his case by a preponderance, that is the greater weight of the credible evidence to the *reasonable satisfaction* of the jury. In another paragraph the instruction read: "To the *satisfaction* of the jury." (Italics ours.) We will not discuss this question at length at this time. This case was tried long before Seago v. New York Cent. R. Co., 349 Mo. 1249, 164 S. W. (2d) 336, l. c. 340, 341 (5, 6) (7, 8), was decided by division one of this court. The question of the propriety of such a requirement was also discussed in Nelson v. Evans, 338 Mo. 991, 93 S. W. (2d) 691 and in Rouchene v. Gamble Const. Co., 338 Mo. 123, 89 S. W. (2d) 58, l. c. 63. Also note the admonition in Mitchell v. Dyer, 57 S. W. (2d) 1082, l. c. 1083. Those cases disclose the trend of recent opinions. A reading of them will also show that Missouri is one of few states in which such an instruction has been tolerated. It is certain, in view of what we have said, that if a trial court should grant a new trial and assign as a reason therefor the giving of such an instruction this court will sustain the ruling. We will not hazard to speculate on how soon Missouri will join the

354

majority of the jurisdictions condemning such instructions as casting a greater burden on a plaintiff than should be required under the law. In this case a careful consideration of the evidence convinces us that the judgment below is supported by substantial evidence and is for the right party. We will, therefore, not disturb the result.

The judgment is affirmed. *Bohling, C.,* concurs in result; *Barrett, C.,* concurs.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.