228 S.W.2d 743 (1950)
JANSSENS et al.
v.
THOMPSON.
No. 41104.
Supreme Court of Missouri, en Banc.
March 13, 1950.
Rehearing Denied April 10, 1950.
*744 M. G. Roberts, E. G. Nahler, St. Louis, Thomas E. Deacy, Milligan, Kimberly & Deacy, Kansas City, attorneys for appellant.
Harry R. Freeman, John G. Madden, Madden, Freeman, Madden & Burke, Kansas City, attorneys for respondents.
HYDE, Chief Justice.
Action for $10,000 damages for wrongful death of plaintiffs' son. Verdict for defendant and new trial ordered for error in giving defendant's Instructions 4, 5 and 6. Defendant has appealed.
Defendant contends that these instructions were correct and also that plaintiffs failed to make a jury case. The case was submitted solely upon humanitarian negligence. Plaintiffs' son, Edgar G. Janssens, Jr., was killed when the truck he was driving east was struck by defendant's northbound passenger train at the entrance to Flynn's Quarry in Jackson County. This quarry was on the east side of the railroad which ran north and south, paralleled a short distance west by U. S. Highway 71. A gravel road ran east from the Highway into the quarry. This road was 19 feet wide and the distance from the Highway to the railroad track was about 88 feet. Where the road turned off from the Highway it was about twice as wide, but it narrowed to 19 feet in about that distance from the Highway. There is some conflict in the evidence about the condition of this road on the day of the collision. However, the testimony most favorable to plaintiffs' theory of the case was that this road was covered with ice, which had melted some the day Janssens was killed, and was very slick. There had been a heavy snow about two weeks before, which had been packed and frozen over the gravel, and there had been freezing rain more recently. The Highway had been cleared by snowplows which left a considerable ridge of packed frozen snow across the entrance to the gravel road. There were two sets of ruts in this snow and ice which came together to form two tracks where the road narrowed and these continued to the railroad. There was only a slight grade from the Highway to the railroad.
Defendant's track was straight for 730 feet south of the quarry crossing and it then curved slightly to the left. Defendant's train had stopped at Holms Park less than one-half mile from the quarry. The track was downgrade from that point to and beyond the quarry. Defendant's engine was working steam and continuously increasing speed as it approached the crossing. Its speed was estimated at 20 miles per hour 600 feet from the crossing, 25 *745 miles per hour at 400 feet and 35 miles per hour before reaching the crossing. The engineer said the train could have been stopped in about 350 feet at 20 miles per hour, in about 400 feet at 25 miles per hour (we do not understand these estimates to allow for reaction time) and that it actually was stopped between 500 and 600 feet after the brakes were applied about 50 to 75 feet south of the crossing. The engine was about at that point, when the fireman, on the left side of the engine, called to the engineer (who was on the other side and could not see Janssens approaching) to stop. The fireman said Janssens was then 18 or 20 feet from the track. He said he saw Janssens make a left turn from the Highway at about 10 miles per hour when the train was 600 feet south of the crossing; that he then slowed down to about three to five miles per hour giving the appearance of coming to a stop; but that when 18 to 20 feet from the track he speeded up and went on the crossing so that the engine struck the front part of the truck. He said the truck came straight toward the track and did not appear to be skidding or sliding.
However, plaintiffs' witness, Mull, who said he was driving south on Highway 71, testified he saw the truck turn east from the Highway at about 8 mile per hour and immediately start skidding. He said it slowed down a little (to about 5 miles per hour) before the collision. He further described its movements as follows: "Just as soon as he drove in there he went to sliding and he slid all the way in there until the train hit him. * * * He never did get the truck righted. When he drove in there his left wheels never did get over in the ruts there. The back end of the truck was to the north and the front end to the south. * * * His right-hand (rear) wheel was in a left-hand rut. * * * The engine, to my best judgment, it hit him just about at the back wheels." He further stated that he saw the train about 450 feet south of the crossing about the same time he saw the truck turn in (he estimated the speed of the train then at 20 miles per hour and said it increased to 30); and that he stopped his car and got out because he "was sure there was going to be a collision." He said he was driving 25 to 30 miles per hour about 350 feet from the gravel road when he saw the train and that he stopped about 100 feet north of the road and was out of his car eight or ten seconds before the collision occurred. He also said the truck was 15 or 20 feet into the roadway when he came to a stop. All of the evidence tends to show that the engine was whistling for the crossing.
Defendant cites such cases as Wolverton v. Kurn, 348 Mo. 908, 156 S.W.2d 638; Kick v. Franklin, 342 Mo. 715, 117 S. W.2d 284; Taylor v. Missouri, K. & T. R. Co., Mo.Sup., 212 S.W.2d 412; Hutchinson v. Thompson, Mo.Sup., 175 S.W.2d 903; Knorp v. Thompson, 352 Mo. 44, 175 S.W. 2d 889; Stark v. Berger, 344 Mo. 170, 125 S.W.2d 870; and Flint v. Chicago, B. & Q. R. Co., Mo.Sup., 207 S.W.2d 474. In these cases, we held that the plaintiff did not make a submissible case on stopping or slackening speed. Defendant argues this on Mull's estimate of distances. His estimates of time and distances were somewhat what inconsistent. (If the train was only 450 feet from the crossing when the truck was turning into the roadway, he could hardly have driven 250 feet, stopped, got out and stood 8 or 10 seconds before the train reached the crossing.) However, these were only estimates and not conclusive. Defendant's fireman said the train was 600 feet from the crossing when the truck turned into the roadway. If it started skidding "just as soon as he drove in there", as Mull said it did and as the jury could have found, then the jury could reasonably have found that Janssens' obliviousness or helplessness, and imminent peril therefrom, should have been apparent to the fireman in time for him to have thereafter informed the engineer so that (instead of continuously increasing speed) he could have slackened speed sufficiently to have permitted Janssens to escape. (Failure to slacken speed was the only charge of negligence submitted.) This case is more like the muddy road cases in which we held that the evidence was sufficient to show obliviousness of a driver attempting to cope with such conditions. Womack v. Missouri Pacific *746 R. Co., 337 Mo. 1160, 88 S.W.2d 368; Hencke v. St. Louis & Hannibal R. Co., 335 Mo. 393, 72 S.W.2d 798; Willhauck v. Chicago, R. I. & P. R. Co., 332 Mo. 1165, 61 S.W.2d 336. We, therefore, hold that plaintiffs made a case for the jury.
The Court ordered a new trial "on the ground that the Court was in error in giving defendant's Instructions 4, 5 and 6", which were as follows:
"4The Court instructs the jury that the engineer or fireman in charge of a locomotive running a train upon seeing a motor vehicle approaching a crossing while such motor vehicle is still in a place of safety and at such distance from the crossing as to yet allow the driver a reasonable time to stop before going upon the crossing in front of such train is entitled to assume that the driver of such motor vehicle will stop before going upon a crossing and into danger of being struck by such train; and the court further instructs you that neither the engineer nor fireman on the train is under any duty to blow the whistle or attempt to stop or slacken the speed of the train until he sees, or in the exercise of ordinary care should see, that such motor vehicle is not going to stop and is in a position of danger.
"In this connection the court further instructs you that if you find and believe from the evidence that as soon as it was apparent to the fireman or engineer on the train or would have been apparent to a reasonably prudent and careful fireman or engineer under such circumstances that the automobile truck driven by the deceased was in a position of imminent peril it was then too late for the fireman and engineer in the exercise of ordinary care, with the means and appliances at hand and with safety to the train and passengers thereon, to slacken the speed of the train in time to avoid a collision, then plaintiffs are not entitled to recover and your verdict should be in favor of the defendant."
"5. By the terms `imminent peril' and `position of imminent peril' as used in these instructions the court has reference to a perilous situation that is imminent and immediately impending, and which allows no time for deliberation on the part of the person in peril between its appearance and the impending collision. It does not mean a remote, uncertain or contingent danger, or one which was thereafter avoidable on the part of the deceased.
"In this case you are instructed that the deceased was not in a position of imminent peril until he reached a position where under the conditions and circumstances then and there existing the fireman or engineer on the engine in the exercise of ordinary care could and should have seen the truck being driven by the deceased and should have realized that the driver thereof would not or could not stop said truck or change its course before coming onto the railroad crossing mentioned in evidence and into the path of the train."
"6. The court instructs the jury that if you find and believe from the evidence that the sole cause of the collision mentioned in evidence and the death of plaintiffs' son was the negligence, if any, of their said son in failing to look or listen for the approach of a train, if he did so fail, or in failing to stop the truck he was driving before the collision with the train, if he could have done so by exercising the highest degree of care in operating said truck, and that defendant was not guilty of any negligence as defined in other instructions given you herein, then plaintiffs cannot recover and your verdict should be for the defendant."
We cannot hold Instruction 4 erroneous. In Clark v. Atchison, T. & S. F. R. Co., 319 Mo. 865, 6 S.W.2d 954, we reversed and remanded solely for refusal of a similar instruction. In Poague v. Kurn, 346 Mo. 153, 140 S.W.2d 13 we said that such an instruction in a humanitarian case should not make reference to the care to be used by plaintiff. See also Lynch v. Baldwin, Mo.Sup., 117 S.W.2d 273. However, Instruction 4 did not contain any such reference. We also said in the Poague case that what this instruction really meant, and that what the trainmen were entitled to assume, was that the approaching driver was not oblivious to the approach of the train unless he showed some reasonable appearance of obliviousness; and that it would make the issues clearer to state it that way. Here defendant's evidence was that Janssens' *747 actions (continuing to slow down until he got within about 20 feet of the track) indicated that he was not oblivious. Therefore, there was evidence on which to base such an instruction; and there is no criticism of the second paragraph which was a converse of plaintiffs' humanitarian submission. The order of the trial court did not find that this instruction was misleading but was based on it being erroneous. The order cannot be sustained on that ground because this instruction did not misstate the law.
However, the Court's order must be sustained on Instruction 5. In State ex rel. Kansas City Public Service Co. v. Bland, 354 Mo. 868, 191 S.W.2d 660, we held an instruction erroneous which was substantially the same as the first paragraph of this instruction. We said that imminent peril was not limited to unavoidable danger and that such a direction in an instruction was in conflict with the leading humanitarian negligence case of Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482. Of course, an oblivious person may be in a position of imminent peril even though he could avoid the danger if his obliviousness were overcome. (That is the basis of the duty to warn in humanitarian cases.) In this case, on plaintiffs' evidence, the jury could have found either obliviousness or helplessness. Obliviousness might have been due to Janssens' close attention to driving under difficult road conditions and that would require other action when it became apparent that whistling had not overcome it. It might also be pointed out that the second paragraph of Instruction 5 submitted, disjunctively, change of course of the truck "before coming onto the railroad crossing." There was no evidence to show that any change of course was possible on this 19 foot roadway with deep depressions on each side.
Since this case must be re-tried we must also rule on Instruction 6; it was disagreement as to this instruction that caused transfer of this case from Division to Banc. Sole cause instructions, particularly in humanitarian cases, have been a troublesome problem for Bench and Bar for years. (See McClearyThe Defense of Sole Cause in the Missouri Negligence Cases, 10 Mo. Law Rev. 1.) There is no doubt about a sole cause situation in this case under defendant's evidence. This tended to show that the gravel roadway was not covered with snow or ice; that the truck turned into the road, traveling straight, apparently under control of the driver; that its speed was reduced from 10 miles per hour to about 3 miles per hour, giving reasonable appearance of stopping; that then the truck suddenly speeded up only about 20 feet from the track, when the train, going 30 to 35 miles per hour, was about 70 feet from the crossing. Defendant had the right to submit this theory to the jury but it should submit the actual situation shown by its evidence.
If defendant's Instruction 6 had submitted, instead of failure to look or listen or failure to stop, "that plaintiffs' son, as he approached the railroad crossing, slowed down his truck so that it appeared to be stopping and could have been stopped at a place where it was not in a position of danger of being struck by defendant's train and that he thereafter suddenly speeded up his truck, from a position of safety near the track, and drove on to the track closely in front of defendant's train", this would have been a good sole cause instruction (if it required a sole cause finding "and that defendant was not guilty of any negligence, etc.") under our previous decisions, which have approved sole cause instructions. Steffan v. Ritter, Mo.Sup., 214 S.W.2d 28; Jants v. St. Louis Public Service Co., 356 Mo. 985, 204 S.W.2d 698; Kimbrough v. Chervitz, 353 Mo. 1154, 186 S.W.2d 461; Schlemmer v. McGee, Mo.Sup., 185 S.W.2d 806; Robb v. St. Louis Public Service Co., 352 Mo. 566, 178 S.W.2d 443; Johnson v. Dawidoff, 352 Mo. 343, 177 S.W.2d 467; Branson v. Abernathy Furniture Co., 344 Mo. 1171, 130 S.W.2d 562; Johnston v. Ramming, 340 Mo. 311, 100 S.W.2d 466; Doherty v. St. Louis Butter Co., 339 Mo. 996, 98 S.W.2d 742; Borgstede v. Waldbauer, 337 Mo. 1205, 88 S.W.2d 373. Surely it is no more difficult to make such a hypothesization of these facts, under which *748 the humanitarian rule could not apply, than it is to hypothesize the essential facts of most specific negligence cases.
As we said of the instruction we approved in Steffan v. Ritter, supra, 214 S.W. 2d loc. cit. 30 "this instruction hypothesized a factual situation under which the humanitarian rule could not apply. When an instruction does that and requires (as this one did) a finding that defendant was not guilty of any negligence submitted in the instructions hypothesizing plaintiff's theory of recovery, it is a good sole cause instruction."
Defendant relies upon the Jants case, supra, 204 S.W.2d loc. cit. 701, saying that the instruction we approved therein submitted only excessive speed as sole cause. However, the Jants' instruction required much more than a finding of excessive speed. It further required findings that as the plaintiff's motorcycle approached the streetcar tracks, the streetcar "was already in the intersection"; and that plaintiff "drove his motorcycle onto the southbound street car tracks at a time when the street car was so near to the motorcycle and traveling at such a rate of speed that [plaintiff], in the exercise of the highest degree of care, knew or should have known that a collision was likely to result." This hypothesized a situation in which plaintiff could not have had a humanitarian case, so that the negligence of plaintiff (continuing toward it at excessive speed) was the sole and only possible cause under these circumstances. This instruction supplied the very factor which we held was lacking in the erroneous instruction (submitting nothing but excessive speed) in Long v. Mild, 347 Mo. 1002, 149 S.W.2d 853.
Apparently Instruction 6 was copied from Jurgens v. Thompson, 350 Mo. 914, 919, 169 S.W.2d 353, 356, 358, which was not a humanitarian negligence case. That case was submitted only on the negligence of defendant's crossing watchman in failing to warn of the approach of a train, which struck the automobile in which plaintiff and his wife were riding. The driver, his companion in the front seat, and plaintiff all had time to jump out of the moving car before it reached the crossing but plaintiff's wife did not get out and was killed. (If they all had time to get out it seems reasonable that the driver might have had time to stop.) We held the driver negligent as a matter of law because he admitted he did not look or listen for trains but was depending entirely upon the watchman. (This Court said: "The jury believed the defendant's witnesses and not plaintiff's on the question of fact of whether the watchman performed his duty.") Furthermore, plaintiff's own evidence showed there was no negligence of the trainmen and that they gave warning signals by bell and whistle. Moreover, we said that the reference to stopping could only refer to the 75 feet between the building (obstructing the view) and the track. We held: "We have reached the conclusion that instruction number three, while not a model, was not erroneous under the evidence adduced." Although such an instruction may not have been error under the facts of that primary negligence case, it certainly does not fit the facts (even of defendant's evidence) of this humanitarian negligence case.
Instruction 6, as given, could be construed by the jury as allowing them to find that Janssens' failure to stop, look or listen, at any point, was the sole cause of the collision. The jury might well have found that it was negligence for Janssens to turn from the Highway onto the gravel road without stopping or looking and, if it was as icy as some of plaintiffs' witnesses said, this certainly was negligence. However, that would have been antecedent contributory negligence; and although it may have caused Janssens to drive into a position of imminent peril, or to become helpless to prevent his truck from sliding onto the track, nevertheless defendant's duty under the humanitarian rule arose thereafter; and if, when he turned onto the gravel road, defendant's train was 600 feet south of the crossing going only 20 miles per hour, as the fireman testified, then plaintiffs could have made a humanitarian negligence case. Instruction 6 certainly did not make this clear to the jury; but submission of the facts actually showing a sole cause situation (which defendant had substantial evidence to prove), in which there could have been *749 no humanitarian negligence, would do so as nearly as it is possible to make laymen understand the application of the principles of sole cause and humanitarian negligence. We hold that giving Instruction 6 in this case was error and that the Court properly granted a new trial on this ground.
The order granting a new trial is affirmed and the cause remanded.
DALTON, LEEDY and ELLISON, JJ., concur.
TIPTON, J., concurs in result in separate opinion filed.
CONKLING and CLARK, JJ., concur in result and in separate concurring opinion of TIPTON, J.
TIPTON, Judge.
I concur in the result of the opinion prepared by Chief Justice HYDE. I fully concur in everything in that opinion except what is said in reference to the "sole cause" instruction.
The "sole cause" doctrine is of recent origin in this court. It might be said that this rule of law grew from statements made in the opinion in the case of Causey v. Wittig, 1928, 321 Mo. 358, 11 S.W.2d 11 en banc, and Borgstede v. Waldbauer, 1935, 337 Mo. 1205, 88 S.W.2d 373 en banc. In both of these cases, the phrase, "sole cause", was used as an illustration but neither of these cases involved an instruction that used the phrase, "sole cause". I do not believe a "sole cause" instruction can serve any useful purpose in a two-party humanitarian law suit. In my opinion, a "sole cause" phrase added to a converse instruction, as suggested in the Chief Justice's opinion, would only create confusion. I know of no other state that has approved a "sole cause" instruction in a humanitarian or last chance case. I am unable to harmonize our opinions where a "sole cause" instruction has been presented for our review. The curious may examine them. They are as follows:
Doherty v. St. Louis Butter Co., 1936, 339 Mo. 996, 98 S.W.2d 742; Johnston v. Ramming, 1937, 340 Mo. 311, 100 S.W.2d 466; Dilallo v. Lynch, 1936, 340 Mo. 82, 101 S.W.2d 7; McGrath v. Meyers, 1937, 341 Mo. 412, 107 S.W.2d 792; Smithers v. Barker, 1937, 341 Mo. 1017, 111 S.W.2d 47; Crews v. Kansas City Public Service Co., 1937, 341 Mo. 1090, 111 S.W.2d 54; Branson v. Abernathy Furniture Co., 1939, 344 Mo. 1171, 130 S.W.2d 562; Reiling v. Russell, 1939, 345 Mo. 517, 134 S.W.2d 33; Kick v. Franklin, 1939, 345 Mo. 752, 137 S. W.2d 512; State ex rel. Snider v. Shain, 1940, 345 Mo. 950, 137 S.W.2d 527; Mendenhall v. Neyer, 1941, 347 Mo. 881, 149 S. W.2d 366; Shields v. Keller, 1941, 348 Mo. 326, 153 S.W.2d 60; Hollister v. A. S. Aloe Co., 1941, 348 Mo. 1055, 156 S.W.2d 606; Hopkins v. Highland Dairy Farms Co., 1941, 348 Mo. 1158, 159 S.W.2d 254; Borrson v. Missouri -K. -T. R. Co., 1943, 351 Mo. 214, 172 S.W.2d 826; Johnson v. Dawidoff, 1944, 352 Mo. 343, 177 S.W.2d 467; Robb v. St. Louis Public Service Co., 1944, 352 Mo. 566, 178 S.W.2d 443; Bootee v. Kansas City Public Service Co., 1944, 353 Mo. 716, 183 S.W.2d 892; Schlemmer v. McGee, Mo.Sup. 1945, 185 S.W.2d 806; Kimbrough v. Chervitz, 1945, 353 Mo. 1154, 186 S.W.2d 461; Jants v. St. Louis Public Service Co., 1947, 356 Mo. 985, 204 S.W.2d 698; Teague v. Plaza Express Co., 1947, 356 Mo. 1186, 205 S.W.2d 563; Steffen v. Ritter, Mo.Sup. 1948, 214 S.W.2d 28; and Weis v. Melvin, 1949, 219 S.W.2d 310.
In view of the above, I think we should abolish this court-made rule of law of "sole cause."
CLARK and CONKLING, JJ., concur.

On Motion for Rehearing
Defendant contends our ruling that its instruction No. 6 (submitting sole cause) is erroneous "places a greater burden upon a defendant in a humanitarian case than the law places upon a plaintiff in such an action." The separate concurring opinion herein objects to the use of the phrase "sole cause" in a defendant's instruction as one that "would only create confusion," and points out that it was not contained in the form of instruction approved in Borgstede v. Waldbauer, 337 Mo. 1205, 88 S.W.2d 373. Of course, if an instruction hypothesizes facts under which the humanitarian *750 rule could not apply (because such facts would show as a matter of law that there could have been no humanitarian negligence if they were true) then the instruction would certainly be good without any required finding of sole cause. That would be true of the suggested instruction in the principal opinion herein and the "sole cause" phrase would not be necessary to make it a good instruction. Therefore, it would seem that by including a sole cause finding in such an instruction, the defendant would assume an additional unnecessary burden.
Defendant however overlooks the fact that any defendant's instruction based on the theory that a plaintiff's injuries were caused solely by his own negligence actually submits a converse situation from the plaintiff's humanitarian submission. This is true because following such an instruction would amount to a finding that there was no humanitarian negligence on the part of the defendant. The plea that a plaintiff's injuries were caused solely by his own negligence is not an affirmative defense but "merely a denial of plaintiff's cause of action." Smith v. Kansas City Public Service Co., 328 Mo. 979, 43 S.W.2d 548, 555. If "sole cause" is not an affirmative defense (and it is certainly not a confession and avoidance) then it must require a converse finding to the plaintiff's theory of the case. Therefore, the defendant can either submit the exact converse of plaintiff's humanitarian submission, or of any essential element thereof, or he can submit facts (shown by his evidence) which would disprove one or more of the basic facts of plaintiff's humanitarian submission. See Branson v. Abernathy Furniture Co., 344 Mo. 1171, 130 S.W.2d 562; Doherty v. St. Louis Butter Co., 339 Mo. 996, 98 S.W. 2d 742. If the defendant chooses to submit facts (shown by his evidence and different from plaintiff's version) they must have the legal effect of showing that there could have been no humanitarian negligence on his part. Otherwise they could not disprove any basic fact of the humanitarian rule. If a defendant's instruction does that, and only that, there would be no question of plaintiff's antecedent or contributory negligence before the jury, as appears in defendant's instruction No. 6 herein.
The motion for rehearing is overruled.
All concur.