G. H. McGRAW *v.* NEW YORK CENTRAL RAILROAD COMPANY.

(No. 6972)

Submitted October 13, 1931. Decided October 27, 1931.

176

*Lilly, Lilly & Warwick,* for plaintiff in error.
*C. T. Lewis, Jr.,* and *Leroy Allebach,* for defendant in error.

LIVELY, JUDGE:

Plaintiff, McGraw, obtained a verdict against defendant railroad company in the circuit court on a declaration for personal injuries based on the Federal Employer's Liability Act; and upon motion of defendant, the circuit court set aside the verdict and awarded a new trial. From that order, plaintiff prosecutes error.

The first count of the declaration charges that defendant, an interstate common carrier, failed in its duty to provide plaintiff and his fellow workmen with adequate picks, and says that in removing an old tie from a sidetrack of defendant in conjunction with a fellow workman, plaintiff was permanently injured by a cinder which entered his eye, caused to fly by a strike of the inadequately sharpened pick in the hands of his fellow workman when he drove it into the tie.

The other count of the declaration charges negligence in the act of the fellow servant who struck the tie with this inadequate pick with an unusual and hard blow which caused cinders on the tie to be thrown up into plaintiff's eye ultimately destroying the same.

Plaintiff, who theretofore had experience as a section hand, entered into the employ of defendant in that capacity on the 17th day of May, 1929, and continued in such employment until the injury complained of occurred some six months later. The only evidence as to how the injury occurred is the

testimony of plaintiff himself. The injury occurred in the removal of an old railroad tie from under the rails of a sidetrack of defendant company. Plaintiff and a Mr. Kegley were removing the tie. They had worked together often with other members of the section crew in removal of ties for the purpose of placing new ones in place, and they were proceeding in the usual customary manner. The method of removing these ties was to raise the rails (after taking the spikes out of the ties) and, if necessary, to dig around the ties so as to loosen them. Then one workman would stick his pick in the end of the tie and the other workman would also stick his pick in the same end and by thus getting hold of it they would "snake" the tie from under the rail. This particular sidetrack was ballasted with cinders entirely. Plaintiff says a person could see them any place he looked, "if he would look at them." According to plaintiff's evidence, after the tie had been prepared for removal, in manner above indicated, he struck his pick into the end of the tie and was ready to pull when Kegley struck his pick in the same end of the tie where some loose cinders were lying on the tie (about a handful) and one of the cinders hit him in the left eye, causing his injury. He describes the blow of his companion as an "unusual" and as a "glancing" blow; however, he testified that the pick went into the old tie and together they pulled it from under the rail. Plaintiff remarked to his companion at the time: "Mr. Kegley, you have knocked a cinder in my eye." Plaintiff continued his work that afternoon and returned to work on the following day, Saturday, and also on Monday and Tuesday of the following week. He testified that his eye was paining him all this time and that he had applied simple remedies to get relief but did not get relief. On Tuesday afternoon, the foreman told him that he had better go to a hospital and have his eye examined, which was done, and when he reached the hospital, his eye was examined and he stayed there for several weeks taking treatment and undergoing pain all the while. The injury resulted in a 93% loss of the vision of his left eye. Plaintiff said that the picks were ordinary clay-picks and were not sharp, the point being about

the size of his little finger, and that these picks were in that condition in May when he went to work and had never been sharpened and were in the same condition when the accident occurred. Plaintiff's reliance is upon the proposition that he was injured by the negligence of a fellow workman. Plaintiff's counsel recognizes that he cannot recover under the first count charging inadequate picks, as such simple tools are not within the meaning of "cars, engines, appliances," etc., set out in the Federal Act. See *Cook* v. *Ry. Co.*, 97 W. Va. 420, and cases cited.

Assuming that the sidetrack where the injury occurred was used in interstate traffic, although the evidence is meager to establish such use, and assuming that the amount of the verdict ($10,000) is not excessive, we come to the main issue in the case as here presented, namely, has negligence been shown?

Plaintiff could not describe the tie which was being removed. He could not state whether it was sawed or hown, whether it was cresoted or not; and it is not stated whether it was partially decayed or sound; and all he could remember about it was that there was about a handful of cinders on it at the place where his companion struck it with his pick. He said where he (plaintiff) struck there were cinders, but "none that would hurt any body." He says the blow struck by this fellow workman was an unusual blow. In what particular it was unusual he does not say. He says that it was a glancing blow, evidently intending to say that it was not a perpendicular blow, for the pick sank into the wood by which method the two men pulled the tie from under the rail. The blow was hard enough to accomplish the designed purpose of sinking the pick into the tie. It did not glance off. This seems to have been the usual and customary manner in removing ties, to strike hard enough to fasten the pick in the tie. On these meager facts, can we convict Kegley of negligence? The circuit court evidently came to the conclusion that there was not sufficient evidence on which to base the negligence of a fellow servant and set the verdict aside. We respect that holding. Kegley was not a witness, although summoned by plaintiff in

the case. Moreover, plaintiff says that he did not notice the cinders on the tie until after his companion had made the blow. Then he noticed that there was about a handful of cinders on the end of the tie and that Kegley had struck into them.

The burden is on plaintiff to show negligence, and he has not carried that burden. The evidence is too meager. There is no presumption of negligence from the fact of injury. *May* v. *Railway Co.*, 75 W. Va. 797. "The evidence must establish actionable negligence with reasonable certainty before there can be recovery." *Hull's Admr.* v. *Railway Co.*, 78 W. Va. 25; *Culp* v. *Railway Co.*, 77 W. Va. 125. There being no dispute in the evidence, the question of its sufficiency was one for the court, and not for the jury. And where the trial judge who saw the demeanor of the witnesses, whether biased or fair, is not satisfied with the verdict, much weight is given to his conclusion. Judge Roane, in *Bennett* v. *Hardaway,* 6 Mun. (Va.) 129, said, in discussing the view to be taken of the action of the trial court in setting aside a verdict: "It is an important principle that the revising court should have the same lights, and act upon the same data, as the inferior court." *Miller* v. *Ins., Co.*, 12 W. Va. 116; *Levine* v. *Mantel,* 90 W. Va. 166, 173; *Haggar* v. *Transport Co.*, 106 W. Va. 522. Hence, it is well established that a stronger case is required in the appellate court for a new trial, than is required to sustain the lower court in awarding a new trial.

When plaintiff entered the employment he assumed the ordinary risks. He had been at work with these picks for several months, removing ties in the same manner as this one was removed. The striking of the tie with sufficient force to imbed the alleged dull point therein and accomplish the purpose, would likely make cinders thereon fly in all directions. Any person of intelligence and experience would anticipate that result. We think the ejection of cinders, dirt or other small particles from such a stroke would be one of the ordinary risks, and *under the evidence here* we cannot say that this ordinary risk was converted into an extraordinary one by the manner in which the removal of the tie was performed. The

doctrine of the assumption of risk under the Federal Act and decisions construing the same, is stated by JUDGE. HATCHER in his usual clear and concise way in *Childress* v. *N. & W. Ry. Co.*, handed down this term, as follows: "Ordinary risks of an occupation are assumed by an employee whether he is actually aware of them or not; and a risk not naturally incident to the occupation is also assumed, where the employee knows of it and appreciates the danger, or where the risk and danger are so obvious as to preclude the inference that he was unaware of them."

The order of the circuit court is affirmed.

*Affirmed.*