**Ralph TERRELL, Appellant,**

v.

**MISSOURI–KANSAS–TEXAS RAILROAD COMPANY, Respondent.**

No. 46906.

Supreme Court of Missouri,

Division No. 2.

July 13, 1959.

Motion for Rehearing or to Transfer to Court en Banc Denied Sept. 14, 1959.

R. Shad Bennett, Philip A. Foley, Clayton, Gullett & Gullett, Denison, Tex., George E. Murray, Clayton, for appellant.

Fordyce, Mayne, Hartman, Renard & Stribling and Fred W. Schwarz, St. Louis, for (defendant) respondent.

STOCKARD, Commissioner.

In this suit for personal injuries under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., plaintiff sought damages in the amount of $100,000. The jury returned a verdict for defendant and plaintiff has appealed. This is the second appeal in this case. See Terrell v. Missouri-Kansas-Texas R. Co., Mo.Sup., 303 S.W. 2d 641. We shall refer to the parties as denominated in the trial court.

Plaintiff was a brakeman for defendant on a local freight running from McAlester, Oklahoma, to Dennison, Texas. At Atoka, Oklahoma, the train was stopped to "drop off" one car and to pick up three others which were standing on a spur of what is designated as the "OCAA" track. The train was "spotted" about eleven car lengths north of a switch, and the engine and the first car (the one to be "dropped") were separated from the train. The engine was backed onto the switch or interchange track until it had passed the connection with the spur where the three cars were standing. It, then, was moved forward onto the spur and coupled with the three cars. The cars were pulled back onto the interchange track and then pushed onto the main track and southward about twenty car lengths beyond the switch. In this arrangement the engine was between the train and the three cars. The "list brakeman," standing at the switch, gave the signal for a "drop switch." The engine then started backward pulling the three cars, the "list brakeman" gave the "easy signal," the engineer set the brakes on the engine and took up the slack between the engine and the front car, the head brakeman pulled the pin and uncoupled the three cars from the engine, the engine then speeded up and turned onto the interchange track at the switch, the "list brakeman" threw the switch and when the three cars

reached the switch traveling under their own momentum they rolled on down the main track toward the stopped train about eleven car lengths distant. Plaintiff testified that when the three cars were released from the engine they were traveling twelve miles an hour, but defendant's witnesses had the speed as low as four miles an hour. Plaintiff was riding on the brake platform at the north end of the lead car, and it was his duty to regulate the speed of the cars by use of the hand brake. As the cars passed the switch the "list brakeman" saw that plaintiff had not as yet tightened the brake and he signaled him to do so. The three cars continued the intervening distance to the standing train, and when they struck the head car plaintiff was thrown off and injured. Plaintiff testified that when he passed the switch he tightened the brake but it "didn't seem to slow it down," although he had just tested the brake before the drop switch movement started. There was also evidence that after the cars reached the train the brake had not been fully applied. A more detailed statement of the circumstances may be found in the opinion on the previous appeal.

Plaintiff offered evidence to show that instead of a "drop" switch defendant could have made a "power-controlled switch" or "a spike or scotch switch." Defendant's evidence tended to show that the physical characteristics were ideally suited for a drop switch and that many had been made at this location. Its evidence also tended to show that a "spike or scotch" switch had some dangerous features and a power-controlled switch was not suitable because of a nearby public crossing and the extra required movements.

The trial court gave nine instructions at the request of plaintiff, seven of which directed a verdict. Instruction 2 submitted that if the jury found that "defendant * * * made the 'drop' or 'running' switch movement * * * when it had the facilities and equipment at hand to make the switching movement in a power-controlled

switching operation * * * and that in failing to make the switching movement in a power-controlled operation * * * the defendant was negligent and that such negligence * * * directly caused or contributed to causing the three cars * * to collide with the front of the stopped train of cars * * * with such force, speed and violence as to cause plaintiff to be thrown from the front end of said three cars * * * and that plaintiff was thereby directly caused to be injured, then your verdict shall be for the plaintiff." Instruction 3 was identical except it submitted the failure to use "a pin or scotch switching movement." Instruction 4, given at the request of defendant, was as follows: "The Court instructs the jury that if you find and believe from the evidence that the drop switch movement made on the occasion in question was such that under the circumstances then existing it was a reasonably safe method of doing said work, and was not dangerous, then the defendant was not obligated to use another method of switching."

Plaintiff's first contention is that instruction 4 was prejudicially erroneous because it "does not require the jury to find that defendant was not negligent in selecting the 'drop' switch method of doing the work," and because it is "confusing in that it implies that the jury is to disregard the method in which the switch movement was made and does not hypothesize any of plaintiff's facts." Plaintiff cites under this point in his brief the opinion in the previous appeal in this case, and also cites Boyd v. Terminal Railroad Association of St. Louis, Mo.Sup., 289 S.W.2d 33, 58 A.L.R.2d 1222 and Ritchie v. Burton, Mo.App., 292 S.W. 2d 599. The argument under this point is less than six lines in the brief, and no mention is made of these cases. We do not find that the cited cases ruled on the sufficiency of an instruction similar to instruction 4, and plaintiff has not pointed out the manner or in what way he contends these cases are applicable.

We note that neither instruction 2 nor 3 required the jury to find that the drop switch movement was not a reasonably safe method under the circumstances, or that the power-controlled switch or the "pin or scotch" method was a reasonably safe method. These instructions simply authorized the jury to find the defendant was negligent if it could have made either the power-controlled switch or the "pin or scotch" switch. But, " 'the duty to provide safe methods of doing the work in which employees are engaged does not require the best methods or protective devices which might be devised, but only reasonably safe methods.' " Williams v. Terminal Railroad Association of St. Louis, 339 Mo. 594, 98 S.W.2d 651, 656, certiorari denied 300 U.S. 669, 57 S.Ct. 511, 81 L.Ed. 876. Therefore, instruction 4 was a correct statement of the law, it did not misdirect the jury, and it could not possibly have been prejudicial to plaintiff.

Plaintiff's contention that the instruction did not require the jury to find that defendant was not negligent in selecting the drop switch method obviously is without merit, and of course it was not necessary for defendant to hypothesize "plaintiff's facts." Instead of this instruction being confusing, as plaintiff contends, under the circumstances it made a correct clarification of plaintiff's instructions 2 and 3 and supplied an important deficiency in each.

Plaintiff's second contention is that the trial court erred in giving instruction 7. This instruction follows and refers to plaintiff's instructions 5 and 6. All three must be considered together. Instruction 5 submitted that if the jury found that defendant's operating rules "required the engine to be run on the straight track when practicable" while making a drop switch, that it would have been practicable to have done this but defendant did not do so and was thereby negligent, and this negligence caused or contributed to cause the cars to collide with the train with such violence that plaintiff was thrown off the car and

was injured, then the verdict will be for plaintiff. Instruction 6 submitted the existence of operating rules that "running switches could be made only when the same could be made without danger to employees, equipment or contents of cars," that the defendant, "by and through its agents and supervising employees knew, or by the exercise of ordinary care, could have known" that the drop switch could not be made with safety to plaintiff, and that by making it defendant was negligent, and that such negligence caused or contributed to cause the three cars to collide with the train with such force and violence to cause plaintiff to be thrown from the car and injured, then the verdict will be for plaintiff. Instruction 7 to which plaintiff objects was as follows: "The Court instructs you that if you find and believe from the evidence that the drop switch movement directed and supervised by Mr. Parker, the list man, was of such a character that an experienced and ordinarily competent and careful list man, in the exercise of ordinary care would be justified in concluding that such a switch movement could be made, under the circumstances then and there existing, without danger to employees, equipment or contents of car, and if you further find that the track was sufficiently clear, and that the switches and brakes were in good working order, and that it was not practicable to run the engine on a straight track, then you cannot find for the plaintiff under Instruction No. 5, nor under Instruction No. 6." Plaintiff cites four cases under this point which do not consider an instruction of this type, and in the thirteen-line argument directed to this point he makes no mention of them or any other cases.

Plaintiff's instruction 5 submitted to the jury that if it found that it would have been practicable for defendant to run the engine on a straight track in making the switching movement and defendant did not do so, it could find the defendant to be negligent, and instruction 6 submitted that if it found that defendant by and through its agents and supervising employees knew or

by ordinary care could have known that the drop or running switch could not be made with safety to plaintiff then it could find that by making such a switching movement it was negligent. As a converse instruction, defendant's instruction 7 contains some unnecessary language, but the substance of it is that if the jury found that "the drop switch movement * * * was of such character that an experienced and ordinarily competent and careful list man, in the exercise of ordinary care would be justified in concluding * * * could be made * * * without danger to employees," which of course included plaintiff, then the jury could not find for plaintiff under instruction 6, and if the jury found "that it was not practicable to run the engine on a straight track" the jury could not find for plaintiff under instruction 5. These were the essential elements of recovery submitted in plaintiff's instructions. The defendant can submit what is known as a converse instruction, and in doing so can "submit either the exact converse of plaintiff's verdict-directing instruction, Janssens v. Thompson, 360 Mo. 351, 228 S.W.2d 743, or the exact converse of any essential element of such instruction. Reger v. Nowotny, Mo.Sup., 226 S.W.2d 596; McCarty v. Milgram Food Stores, Inc., Mo. Sup., 252 S.W.2d 343; Oshins v. St. Louis Public Service Co., Mo.Sup., 254 S.W.2d 630. When either is done the result is what is referred to as a 'true converse instruction,' and such an instruction does not require affirmative testimony in support of it. Kimbrough v. Chervitz, 353 Mo. 1154, 186 S.W.2d 461, 464." Liebow v. Jones Store Company, Mo.Sup., 303 S.W.2d 660, 662. See also, Schaefer v. Accardi, Mo. Sup., 315 S.W.2d 230, 234; and Alberty v. Sunshine Biscuit Company, Mo.Sup., 321 S.W.2d 418, 422. We regard the other language in instruction 7 to be surplusage, and if it had any effect it resulted in the assumption of an unnecessary burden by defendant.

The substance of plaintiff's objection to instruction 7 is that it is limited to the

"location and existing conditions, and does not include the speed, additional brakes, heavy loads, slope of the track, the wind," and does not require the jury to find that Mr. Parker was a competent and careful "list" man, and also because the instruction "omits some of the most essential elements of the safety rules and operating codes." This last contention apparently is based on the ruling in the previous appeal in this case that a general verdict-directing instruction there considered ignored those rules. But, unlike the instruction there under consideration, instruction 7 does not direct a verdict for the defendant in the event the jury finds the facts as submitted by it, but it only directs that it cannot find for plaintiff under instructions 5 or 6 and leaves the jury free to find for the plaintiff under other instructions submitting other grounds of recovery. The various matters set forth above which plaintiff contends were omitted by the instruction were not submitted by plaintiff as a basis for recovery, but even if they had been, when instruction 7 was limited in its application to findings under instructions 5 and 6, and did not generally direct a verdict for defendant, it was not necessary to incorporate them. Also, Parker's name was used in the instruction only to identify the switching movement, and the instruction required the jury to find that the switching movement, as thus identified, to be one that "an experienced and ordinarily competent and careful list man [not necessarily Mr. Parker] in the exercise of ordinary care would be justified in concluding" could be made without danger to plaintiff. We find no error prejudicial to plaintiff resulting from instruction 7.

■ Appellant's third point is that the trial court erred in giving instruction 10. This instruction appears to be a redraft of instruction 5 in the previous trial which was held to be erroneous, but unlike that instruction the present instruction does not direct a verdict, and it contains different language. For some unexplained reason plaintiff makes no reference whatever in the argument portion of his brief to this instruction. It must be considered in connection with instruction 9, given at plaintiff's request, which submitted that if defendant "pulled the three cars * * * in the 'drop' or running switch movement * * * at a high and excessive rate of speed that was hazardous and unsafe under the circumstances then and there existing, before releasing them in the 'dropping' operation, and that in so doing the defendant was negligent and that said negligence * * * caused or contributed to cause the three cars mentioned in the evidence to collide with the front end of the stopped train of cars * * * with such force, speed and violence as to cause plaintiff to be thrown from the front end of said three cars" and injured, then your verdict should be for plaintiff. Note that plaintiff did not hypothesize any facts and did not require a finding that the cars were moved at any particular speed, although there was a sharp conflict in the evidence on this question, but only submitted the conclusion that the drop switch was made "at a high and excessive rate of speed that was hazardous and unsafe." Instruction 10 submitted that if the jury found that the drop switch was made under such circumstances that the plaintiff, in the exercise of ordinary care, and in the proper discharge of his duties as a brakeman, could have controlled the movement of said cars, by the use of the hand brake at which he was stationed, so that the coupling of the cars to the train could have been made at a speed of four miles an hour, and if the jury found that "such speed was reasonably safe and not dangerous under the circumstances, then you are instructed that defendant cannot be held to have made said drop switch at an excessive or dangerous rate of speed." It is to be kept in mind that plaintiff does not contend that there was a faulty or defective brake. We should also note that contrary to the statement by plaintiff in his brief that the operating rules "prohibited drop switches at speeds in excess of 4 miles per hour," the applicable parts of the Uniform Code of Operating Rules con-

tained the following provisions: "Make couplings at a speed of not more than 4 miles per hour." * * * "Make running switches only when can be made without danger to employees, equipment or contents of cars."

In Liebow v. Jones Store Company, supra, it was pointed out that in addition to the "true converse instruction," the defendant may also submit facts in an instruction, the existence of which would disprove, that is controvert, one or more of the essential factual elements of plaintiff's case. This is what defendant has done in this case. While plaintiff's instruction 9 was general and did not hypothesize any facts from which the jury could find that the speed of the drop switch movement was made at a high and excessive rate of speed, defendant hypothesized that if the plaintiff in the exercise of ordinary care and in the discharge of his duties as brakeman, could have controlled the movement of the cars so that the coupling, as distinguished from the switching movement, could have been made at a speed of four miles an hour, and that such speed was reasonably safe and not dangerous under the circumstances, then the drop switch was not made at an excessive or dangerous rate of speed. This instruction did not assume that four miles an hour was a safe speed and it did not direct a verdict, as did instruction 5 in the previous trial, but it controverted the essential element of instruction 9 and advised the jury in effect that if it found the facts as submitted then it could not find for plaintiff under instruction 9. However, it left the jury free to find for plaintiff under other submissions of negligence.

Plaintiff's specific objections to instruction 10 are that it does not "hypothesize any facts;" it disregards "any negligence of defendant" in starting the cars at an excessive speed; it requires the plaintiff to brake the cars at the moment they were turned loose; and disregards the question of three loaded cars, the wind, the slope of the track, and "stretching couplings."

The instruction does hypothesize the necessary facts to controvert an essential element in plaintiff's instruction 9, and when it did not direct a verdict for defendant upon the finding only of the issues there submitted it did not need to include the various matters referred to by plaintiff. This instruction did not misdirect the jury and we conclude it is not prejudicially erroneous for any reason assigned by plaintiff.

 Plaintiff next challenges defendant's instruction 12 which was as follows: "The Court instructs the jury that this suit is governed by the provisions of the Federal Employers' Liability Act, a law enacted by The Congress of the United States at Washington. Under that law a railroad employee is not entitled to damages from the fact alone that he sustained injuries while at work. In order for him to be entitled to damages for such injuries, the employee must show that such injuries were caused, in whole or in part, by the negligence of the railroad. In this case, therefore, if you find and believe from the evidence that the defendant was not negligent, then plaintiff is not entitled to any damages for any injuries you find he sustained, and your verdict must be in favor of defendant." Plaintiff's objection to this instruction is that it is a verdict-directing instruction which does not hypothesize any facts and is argumentative and confusing. He cites only Janssens v. Thompson, 360 Mo. 351, 228 S.W.2d 743; and Johnson v. Dawidoff, 352 Mo. 343, 177 S.W.2d 467, which do not pertain to an instruction of this type. In his nine-line argument directed to this point he states that "this court has criticized and reversed many decisions on similar instructions," but no such case is cited. He does not attempt to point out in what way or how the instruction is confusing or prejudicial to him.

This instruction contains two parts. The first consists of all but the last sentence and it constitutes a correct factual statement concerning the provisions of the law

upon which this suit is based. It may be true that it does not have any particular bearing on the merits of the case, and that it probably constitutes what has sometimes been referred to as a "lecture" to the jury, but that fact alone does not necessarily result in it being prejudicially erroneous. Paige v. Missouri Pacific Railroad Company, Mo.Sup., 323 S.W.2d 753. It also might be contended that it tends to be confusing in that it states that plaintiff must show that his injuries were caused, in whole or in part, by the negligence of the railroad instead of "in whole or in part from the negligence of any of the officers, agents, or employees of such" railroad. See 45 U.S.C.A. § 51. But, all the instructions are to be read together, and this was made plain in plaintiff's instructions. In addition, if plaintiff thought the instruction might be confusing by reason of this he could and should have submitted a clarifying or amplifying instruction. Hooper v. Conrad, 364 Mo. 176, 260 S.W. 2d 496.

In suits under the Federal Employers' Liability Act plaintiffs sometime request and obtain an instruction similar to the first part of instruction 12. See Terminal R. Ass'n of St. Louis v. Howell, 8 Cir., 165 F.2d 135, 138; and Terminal R. Ass'n of St. Louis v. Fitzjohn, 8 Cir., 165 F.2d 473, 480, 1 A.L.R.2d 290. In the latter case it was specifically held that "it is not error for a Court to briefly state to the jury the statutory law upon which an action is based and then to point out the specific provisions of the Act which are being invoked in the cause on trial." This abstract statement serves no useful purpose and we see no reason for giving it, but it is factually correct, plaintiff does not show how or in what manner he has been prejudiced thereby, and the giving of such an instruction, generally speaking, is a matter within the exercise of discretion on the part of the trial court.

The last sentence of instruction 12 directs a verdict for defendant, but the instruction does not hypothesize any facts or refer to other instructions, and this seems to be plaintiff's principal objection to it. Of course, it is not necessary that every verdict-directing instruction on behalf of the defendant hypothesize a complete set of facts. For example, in a "true converse" instruction the defendant need only submit the exact converse of any essential element of liability. Also, a burden of proof instruction may direct a verdict for defendant even though no facts are hypothesized. See, for example, the burden of proof instructions set forth in Nelson v. Tayon, Mo.Sup., 265 S.W.2d 409 and Osborne v. Goodman, Mo.Sup., 289 S.W.2d 68. Such a burden of proof instruction, to which plaintiff does not object on this appeal, was given in this case.

Under the Federal Employers' Liability Act as it now stands there are no affirmative common law defenses available to defendant, and the only question is whether the injury complained of resulted in whole or part from the negligence of defendant. Terminal R. Ass'n of St. Louis v. Howell, supra. In a converse instruction the defendant, as a general rule should controvert an essential factual element of liability and not the ultimate conclusion of negligence, but the submission here was correct as an abstract statement of law. Perhaps it could be said that defendant, by requiring the jury to find that it was not "negligent," instead that it was not negligent in any of the respects submitted in other instructions, assumed a greater burden than necessary. However, in any event, in view of the instructions of plaintiff we conclude that instruction 12 was not prejudicially erroneous. For example, in instruction 2 plaintiff submitted that if the jury found defendant made the drop switch when it had the facilities and equipment at hand to make a power-controlled switch it was authorized to find that the failure to make a power-controlled switch was negligence. Of course, if defendant had the "facilities and equipment" to make a drop switch it had the "facilities and equipment" to make a power-controlled switch.

238

The difference involved only the manner of using the same engine, cars and track. Therefore, plaintiff actually submitted to the jury the ultimate conclusion of whether defendant was negligent. Defendant could not controvert the existence of facilities and equipment to make a power-controlled switch, and it could not controvert any fact hypothesized in the instruction from which the jury was instructed it could conclude that the defendant was negligent because no such fact was hypothesized. What was there in instruction 2 for the defendant to controvert? Only the ultimate conclusion of negligence, and this is what defendant did by the last paragraph in its instruction 12.

We do not hereby express any approval of such an instruction when the plaintiff has submitted proper verdict-directing instructions. But when plaintiff in effect submits only the ultimate conclusion of negligence he is in no position to complain that defendant has submitted the converse thereof. For this reason, and because plaintiff has not so much as attempted to point out how or in what manner he has been prejudiced thereby, we hold that under the particular circumstances of this case the giving of instruction 12 was not prejudicial error.

■ Plaintiff next challenges instruction 13 which was as follows: "The Court instructs you that if you find and believe from the evidence that defendant, in making said drop switch, was not negligent in any respect as submitted for your consideration in these instructions, and if you further find that on the occasion in question plaintiff in the exercise of ordinary care, and in the proper discharge of his duties could have controlled the movement of said cars so that coupling with the train could have been made at a speed of four miles an hour or less, and if you find that such speed was reasonably safe and not dangerous under the circumstances and that he failed to so control said cars, and that such failure, if any, was negligence,

and that such negligence was the sole cause of whatever injuries he sustained on the occasion, then your verdict must be in favor of defendant." He contends that this sole cause instruction was erroneous because "it does not hypothesize any facts;" that it "is a repetition of instruction 6 given at the previous trial of this case;" the statement that "the defendant was not negligent as submitted in court [other?] instructions" was confusing; and it is necessary that the instruction "hypothesize the facts of plaintiff's alleged negligence." He cites Janssens v. Thompson, supra; Ferguson v. Betterton, 364 Mo. 997, 270 S.W.2d 756; Reese v. Illinois Terminal Railroad Company, Mo.Sup., 273 S.W.2d 217. However, he does not point out why these cases are applicable and none involves a sole cause instruction except the first which was a humanitarian and not a primary negligence case. The nine-line argument in the brief merely summarizes the language of the point.

We first point out that instruction 13 is not a repetition of instruction 6 in the previous trial which was held to be erroneous. In fact, it is not reasonably similar thereto except that instruction 6 did purport to submit sole cause. The contention that the phrase pertaining to other instructions is confusing apparently refers to a statement in the previous opinion. It was there said that plaintiff's instruction 1 in that trial submitted his various claims of negligence and that "defendant's instruction No. 5, already discussed, [and held prejudicially erroneous] had confused the issues considerably, and as we have held, was in conflict with No. 1," and that the statement in instruction 6 (in the previous trial) in reference to other instructions, in view of these circumstances, "was, at best, confusing." But we do not have that situation in this case, and in the previous opinion it was expressly stated that "Ordinarily, such an instruction [sole cause] may exonerate the defendant of negligence by requiring a general finding of no negligence as submitted in one or more other instruc-

tions," and it is only when the jury is not thus guided by a clear reference to all issuable grounds of defendant's alleged negligence that the facts which would exonerate defendant of negligence must be hypothesized.

The other objections may be considered under the contention that instruction 13 did not "hypothesize the facts of plaintiff's alleged negligence." We agree that the hypothesization was not entirely adequate, and in view of what was said in the previous opinion on this general subject such failure to do so is excusable only because of the following circumstance. One of the seven separate verdict-directing instructions submitted by plaintiff, instruction 8, submitted the negligence of defendant in that it made the drop switch when it knew "or in the exercise of ordinary care would have known that said three loaded cars then being switched * * * could not be controlled or braked by the operation of only one hand brake under the conditions then and there existing." No other facts were hypothesized. It was admitted that it was plaintiff's duty to operate the brake and control the speed of the cars, and there was no submission that the brake was defective. In this manner plaintiff submitted the question of his ability to control the cars, and he thereby necessarily took the position that such a submission constituted a sufficient hypothesization of the facts. Defendant, in its sole cause instruction 13 submitted the question of plaintiff's ability to control the cars, and it required the jury to find "that on the occasion in question, plaintiff in the exercise of ordinary care, and in the proper discharge of his duties, could have controlled the movement of said cars." Obviously, if plaintiff's submission was sufficient, which we do not rule, then defendant's submission was sufficient, and if defendant's was not, plaintiff is in no position to complain. In Palmer v. Lasswell, Mo. Sup., 287 S.W.2d 822, 828, the plaintiff complained of defendant's instruction on contributory negligence because it failed to hypothesize sufficient facts concerning

speed. The court held: "It will be noted that plaintiff submitted no finding as to any disputed issues of fact or circumstances as a basis for finding negligent speed, not even a finding as to the rate of speed at which defendant operated his truck, although there was conflicting evidence as to speed. In such situation, plaintiff-appellant is in no position to complain of a similar defect in defendant's instruction. The error is common to both submissions." See also Carson v. Evans, 351 Mo. 376, 173 S.W.2d 30, 32; Roeslein v. Chicago & E. I. R. Co., Mo. Sup., 214 S.W.2d 13; Layton v. Palmer, Mo.Sup., 309 S.W.2d 561; Banks v. Koogler, Mo.Sup., 291 S.W.2d 883.

Plaintiff's last contention is that the trial court erred in "denying a full and complete cross-examination of the defendant's witness Dr. Moorman, as to the contents of the hospital record introduced into evidence by the defendant."

Dr. Moorman, a surgeon at the Missouri, Kansas & Texas Railroad Employees Hospital Association at Dennison, Texas, testified concerning the treatment given by him to appellant, and in doing so used the hospital records which were identified as exhibit Z but which were not then introduced into evidence, to refresh his recollection. On cross-examination the following occurred:

"Q. All right, Doctor, I will ask you please, sir, to refer to what is known as Local Surgeon's Report in this defendant's exhibit Z, if you will please.

* * * * * *

"Q. I will ask you, Doctor, if line 9 doesn't ask this question:—

"Mr. Schwarz: Just a minute, I object to that, your Honor, because it is a self-serving statement made by the patient himself.

"The Court: Let me see that page, Doctor. (Examining document) Objection sustained. That calls for a

statement made by the patient, and it comes under the hearsay rule."

The exhibits filed with this court show that the question and answer were as follows: "9. What does the injured person say as to the cause of his injury, giving as near as possible the patient's own words. Patient states: 'While dropping cars at Atoka, Oklahoma, the jar knocked me off the top of a box car. I landed between two tracks.'"

Plaintiff cites Moss v. Wells, Mo.Sup., 249 S.W. 411, and another case which we are not able to locate by either the name or citation in the brief. The Moss case is not in point. There the court held admissible as a part of the res gestae a statement to the conductor of a street car by a passenger, who was injured when attempting to alight, that she had without result signaled for the two previous stops.

When plaintiff sought to have the doctor read the above quoted answer from exhibit Z he in effect offered in evidence that part of the hospital record. There is no question concerning the qualification of the hospital record under The Uniform Business Records as Evidence Act, §§ 490.660–490.690 RSMo 1949, V.A.M.S., but that does not necessarily make all parts thereof automatically admissible. "If specific and legally proper objections are made to parts of the record, on grounds other than hearsay generally, such parts may be properly excluded * * * In other words, all that the Act does, essentially, is to eliminate the hearsay objection." Allen v. St. Louis Public Service Company, 365 Mo. 677, 285 S.W.2d 663, 666–667, 55 A.L.R.2d 1022. It was further stated in the Allen opinion that "It would seem that [certain designated] parts of a duly authenticated and qualified hospital record should be admissible, unless subject to specific objections such as * * being self-serving, * * *." Here that part of the hospital record offered in evidence by plaintiff was clearly self-serving,

and that was the precise objection made thereto by defendant.

Plaintiff's point refers to the fact that he was attempting to cross-examine Dr. Moorman as to the contents of a "hospital record introduced into evidence by the defendant." But, as previously noted, the entire hospital record, although identified as exhibit Z, had not then been admitted in evidence, and the part offered by defendant had no bearing whatever on the parts previously read by Dr. Moorman, and could not possibly be considered to constitute permissible cross-examination. We note, however, that at the end of defendant's evidence its counsel stated: "I just want to make the statement that all the exhibits that I have had marked and we spoke about, I would like to formally introduce them into evidence." The court stated that he thought "they have been in evidence by the use that has been made of them." If this constituted an admission into evidence at that time of everything in exhibit Z, we think that plaintiff could then have called the attention of the jury to the contents of his self-serving statement contained therein. But he did not do so, and the ruling of the trial court was correct at the time it was made, and we should not now convict the court of error because subsequent events would have required a different ruling if the matter had then been presented. Gough v. General Box Co., Mo.Sup., 302 S.W.2d 884, 888.

We find no error prejudicial to plaintiff and the judgment is therefore affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

STORCKMAN, P. J., EAGER, J., and STONE, Special Judge, concur.